IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DONALD L. DAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-12-517-L |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration,[1] , | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. §405(g).

I. Background

Plaintiff protectively filed an application for Title II disability insurance benefits ("DIB") on January 22, 2007. (TR 13, 124-126, 147). On November 13, 2008, Plaintiff filed an application for Title XVI supplemental security income ("SSI") benefits. (TR 119-122). In both of these application, Plaintiff alleged that he was disabled beginning January 9, 2007, due to the residuals of injuries from an automobile accident, including urinary and bowel incontinence, severe breathing problems, and chronic back and right hip pain, as well as emphysema, degenerative disc disease in his lower back, high blood pressure, hepatitis C viral infection, and migraine headaches.[2] (TR 119, 124, 151). The agency determined that Plaintiff's DIB insured status expired on June 30, 2007. (TR 13-25,147).

Plaintiff's applications were administratively denied on initial and reconsideration reviews. (TR 67, 69). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Werner ("ALJ") on January 28, 2010. (TR 31-62). At this hearing, Plaintiff testified that he was 56 years old and had completed one year of college. Plaintiff described a deteriorating back impairment resulting from the injuries he incurred in a January 2007 automobile accident. Plaintiff also described urinary and bowel incontinence as well as treatment for drug and alcohol addiction since the accident. Plaintiff described a six-week period of employment as a self-employed roofing estimator in 2009 and part-time work as a self-employed curb painter for a three-month period in 2009.

---

[2] Plaintiff also alleged "hypglycemia," but it is not clear what condition Plaintiff was alleging. (TR 151).

On January 7, 2007, Plaintiff was in his vehicle and parked on the side of a highway when the vehicle was struck from behind by a tow truck. (TR 219). The impact was so great that firefighters had to extract Plaintiff from his vehicle. (TR 219, 221). He reported no prior medical history at the time of the accident. (TR 219).

As a result of the accident, Plaintiff's left lung was collapsed, and he was intubated for several weeks and then underwent a tracheostomy. (TR 234, 238, 248-249). Plaintiff also suffered multiple broken ribs, and his spleen had to be removed. (TR 215, 235). In February 2007, Plaintiff underwent surgery to repair a "burst fracture" in his lumbar spine. (TR 311). During this operation screws were placed in Plaintiff's spine to repair the fracture, and his spine was fused at three levels. (TR 311, 316). His injuries required treatment by a number of specialists in the ensuing months, including a urologist, an ear, nose, and throat specialist, and follow-up treatment by a neurosurgeon. Plaintiff also underwent a six-week program of physical therapy in March and April 2007. (TR 248, 317).

The administrative record includes records of treatment of Plaintiff by Dr. Mohyuddin beginning in February 2007 for chronic low back pain, dyspnea, chronic obstructive pulmonary disease ("COPD"), and vocal cord paralysis (TR 285-298); treatment of Plaintiff by Dr. Mohyuddin at Southern Hills Medical Center, Nashville, Tennessee, between March 2, 2007 and March 5, 2007, for probable COPD (TR 242-243); and treatment of Plaintiff by Dr. Mohyuddin at Southern Hills Medical Center between April 23, 2007 and April 24, 2007, for bilateral vocal cord abductor paresis-paralysis, allergic rhinitis, and bronchitis (TR 248-249). The record shows Plaintiff was treated by Dr. Schlosser, a neurosurgeon, in March

2007 (TR 316-317), April 2007 (TR 311), and June 2007 (TR 307), and by Dr. Porch, a urologist, in April 2007 (TR 312-314), May 2007 (TR 309), and June 2007 (TR 308). Plaintiff was also treated by Dr. Mowery, an ear, nose, and throat specialist, in July 2007 (TR 305). The remainder of the medical record concerns treatment of Plaintiff that occurred well beyond the date his DIB insured status expired.

The ALJ issued a decision on July 9, 2010, that was partially favorable to Plaintiff's applications. (TR 13-25). The ALJ found that beginning on January 9, 2007, his alleged onset date, Plaintiff had severe impairments due to polysubstance and alcohol abuse, degenerative disc disease of the lumbar spine, and chronic obstructive pulmonary disease. (TR 16). The ALJ found that "prior to November 13, 2008," Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. (TR 18). However, the ALJ found that Plaintiff was disabled beginning November 13, 2008, the date on which he filed his SSI application, because between the date he was last insured (June 30, 2007) and November 13, 2008, his RFC for work "deteriorated" such that he was only capable of performing sedentary work. (TR 23). The ALJ further found that "shortly before" November 13, 2008, Plaintiff's age category changed, and he became an individual of "advanced age" as classified by the agency. (TR 24). The ALJ also found that as of November 13, 2008, Plaintiff was not able to transfer job skills to other occupations with minimum adjustment in terms of tools, processes or settings. (TR 24). Employing the agency's Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that Plaintiff was disabled as of November 13, 2008, and entitled to SSI benefits.

With respect to Plaintiff's DIB application, the ALJ found that "prior to November 13, 2008," Plaintiff had the ability to perform the full range of light work but "based on all of the impairments, including the substance use disorder, there [were] no jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (TR 18, 20). However, "[i]f [Plaintiff] stopped the substance use and until the date of documented medical deterioration . . ., [Plaintiff] would have the [RFC] to perform the full range of light work," including his past relevant work "as a salesman." (TR 21, 22). Alternatively, the ALJ found that even if Plaintiff could not return to his previous job, he was not disabled under the agency's Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.14, given his age, RFC for work, education, and work experience prior to June 30, 2007. (TR 22). The Appeals Council declined Plaintiff's request to review this decision. (TR 1-3).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner only with respect to his application for DIB benefits. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th

Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. Id. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

The agency determined that Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on June 30, 2007. (TR 13, 25, 147). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on June 30, 2007. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Step Four and Alternative Step Five Finding

The ALJ determined at the fourth step of the required sequential analysis that Plaintiff

was not disabled for the purpose of his DIB application because he was capable of performing his previous job as a salesman. The ALJ reached this decision only because he found that Plaintiff's substance abuse disorder was a "contributing factor material to the determination of disability" and if Plaintiff stopped his substance abuse he would be capable of performing a full range of light work, including his past relevant work as a salesman for a roofing and home improvement business.[3]

Plaintiff does not address the substance abuse portion of the step four determination. Plaintiff contends there is not substantial evidence in the record to support the ALJ's step four finding because Plaintiff was unable to climb ladders and his ability to reach was limited and his previous job as a salesman required the use of ladders multiple times during the workday as well as reaching, as the job was described by Plaintiff. Plaintiff does not, however, point to any particular medical evidence in the record to support these work-related restrictions. Plaintiff has therefore failed to show that the ALJ erred in assessing Plaintiff's RFC for work during the relevant period prior to the expiration of his DIB insured status. See SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992)(noting that absent references to

---

[3]The ALJ's application of the law regarding disability in the presence of drug or alcohol abuse impairments is curious. See 42 U.S.C. § 423(d)(2)(C)(providing that "[a]n individual shall not be considered to be disabled for purposes of [the Social Security Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"); 20 C.F.R. § 404.1535(a)("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."). In considering Plaintiff's Title II DIB application, the ALJ points to no evidence in the record of drug or alcohol abuse until August 2008, and the record contains no hint of Plaintiff's drug or alcohol abuse until well after Plaintiff's DIB insured status expired. Nevertheless, the Commissioner's error is harmless.

specific portions of the record the court will not "sift through" record to find support for claimant's arguments); Fisher v. Astrue, 2013 WL 622355 (N.D. Okla. 2013)(unpublished op.)("It is Plaintiff's duty on appeal to support his arguments with references to the record and to tie relevant facts to his legal contentions.  The court will not 'sift through' the record to find support for the claimant's arguments.")(citing, inter alia, Thomas, 965 F.2d at 827).

Plaintiff also contends that pain limited his ability to function during the relevant time period and precluded his ability to perform his previous job.  In support of this argument, Plaintiff points to several treatment records.  Plaintiff points to Dr. Schlosser's report of a March 19, 2007 examination of Plaintiff in which Plaintiff reportedly stated that he continued to experience back pain particularly with sitting for long periods or with standing or walking for long periods. (TR 316).  Dr. Schlosser also noted in this report that on examination Plaintiff exhibited full strength in his lower extremities and a normal gait. (TR 316).  Plaintiff was to begin a six-week program of physical therapy and return for a follow-up appointment after completion of physical therapy. (TR 317).  Six weeks later, on April 30, 2007, Dr. Schlosser reported that he examined Plaintiff and that Plaintiff felt he had "gotten somewhat better" although he continued to experience back pain that was "quite difficult" for him on some days. (TR 311).  Dr. Schlosser noted that Plaintiff was "completely stable" on physical examination and that x-rays of Plaintiff's thoracic and lumbar spines showed no abnormalities. (TR 311).  The report is incomplete, however, concerning the physician's diagnostic assessment and any prescribed treatment.

In June 2007, Dr. Schlosser reported that he had examined Plaintiff again and that

Plaintiff was "controlling his pain" with prescribed narcotic pain medication and that the medication provided "pretty reasonable pain control." (TR 307).  Dr. Schlosser noted that Plaintiff walked without difficulty and had good strength. (TR 307).  Dr. Schlooser also reviewed a CT scan and noted Plaintiff's fracture was stable and that his lumbar spine showed no significant degeneration of the fused discs. (TR 307).  Dr. Schlosser found that Plaintiff was doing "reasonably well" and should continue his conservative treatment of medications, which were "controlling" his pain. (TR 307).  The office notes of Plaintiff's treating physician, Dr Mohyuddin, also reflect that in March 2007 Plaintiff exhibited normal gait, good balance, and full range of motion and strength in his upper and lower extremities. (TR 296).

     Plaintiff refers to other portions of the medical record concerning additional alleged exertional or nonexertional limitations.  The record shows that Plaintiff was diagnosed with bilateral vocal cord abductor paresis-paralysis in April 2007, after he sought emergency room treatment for shortness of breath. (TR 248). However, pulmonary function tests showed that his spirometry was normal, and a chest x-ray was interpreted by Dr. Mohyuddin as showing no evidence of acute pulmonary disease.  (TR 248).  Plaintiff was discharged the following day with medications in an improved condition but with "some dyspnea on exertion."  (TR 249). The physician noted that no COPD was found in the pulmonary function testing. (TR 249). An ear, nose, and throat specialist, Dr. Mowery, reported in July 2007 that Plaintiff had "near complete paralysis of both vocal cords with minimal movement of the right true vocal cord." (TR 305).  Dr. Mowery noted he recommended either a tracheostomy or "waiting for

his vocal cords to improve" and that Plaintiff decided to wait until after his upcoming vacation. (TR 305).

Although it is reasonable to assume that Plaintiff was unable to work for a period of time after his back operation, no physician indicated Plaintiff's ability to work was limited after that time period and prior to the expiration of his DIB insured status. In fact, the record shows that Plaintiff recovered sufficiently to go on a vacation to Hawaii in August 2007 and that he reported to his treating physician he was planning to go to Montana following that trip. (TR 286, 289). Moreover, Plaintiff's statements to his treating physicians indicate that prior to the expiration of his DIB insured status his pain was being reasonably well controlled with medication. As the ALJ noted in the decision, by June 2007 Plaintiff was observed by his treating neurosurgeon to be walking without difficulty and to exhibit good strength. (TR 19, 307).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). The ALJ recognized that Plaintiff had pain-causing impairments and analyzed Plaintiff's complaint of disabling pain and nonexertional impairments under the required standard. See Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987). To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human

Servs., 929 F.2d 534, 537 (10th Cir. 1990).

The ALJ found that Plaintiff's allegation of disabling pain and nonexertional impairments was not entirely credible because the medical evidence in the record was not consistent with the allegation. The ALJ also considered other factors relevant to the credibility determination, including Plaintiff's medication and the effectiveness of his medication. See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)(reciting factors that may be considered in analyzing credibility of disabling pain allegation); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing seven factors relevant to credibility analysis); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 3 (same). Dr. Woodcock, a non-examining medical consultant completed an RFC assessment, based on the physician's review of the medical evidence, and found that before the date Plaintiff's DIB insured status expired he could perform light work with no more than occasional stooping and which avoided concentrated exposure to fumes, odors, gases, or poor ventilation. (TR 359-366). This RFC assessment also provides support for the ALJ's RFC finding for light work.

There is substantial evidence in the record to support this conclusion and the step four determination that Plaintiff's impairments did not preclude the performance of his previous salesman position prior to the expiration of his DIB insured status. Furthermore, the ALJ did not err in failing to obtain vocational testimony in connection with this step four determination. See Kepler v. Chater, 68 F.3d 387, 392 (10th Cir. 1995).

Although Plaintiff challenges the Commissioner's alternative step five determination, it is not necessary to address this argument in light of the recommended disposition.

Nevertheless, suffice it to say that the Commissioner did not err in applying the Medical-Vocational Guidelines to make the alternative step five determination with respect to Plaintiff's DIB application. Here, there is substantial evidence in the record, as summarized previously, supporting the ALJ's conclusion that Plaintiff's nonexertional impairments did not limit his RFC to perform the full range of light work within the relevant time period. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)(Medical-Vocational Guidelines should generally not be used if the claimant has nonexertional impairments such as pain limiting the ability to do the full range of work in RFC category); Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994 (use of Medical-Vocational Guidelines is foreclosed only where the claimant's "nonexertional impairments are significant enough to limit the range of jobs available in a given work category").

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for Title II benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____April 4th___, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____15th____ day of ____March____, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE